**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0047n.06
Filed: January 19, 2007

**No. 05-2646**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| Rocelious Williams, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Kurt Jones, | ) | **O P I N I O N** |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

**BEFORE:** **DAUGHTREY and MCKEAGUE, Circuit Judges; and REEVES, District Judge.**[*]

**McKeague, Circuit Judge.** Respondent-Appellant Kurt Jones appeals the district court's granting habeas relief to Petitioner-Appellee Rocelious Williams. The district court granted Williams' habeas corpus petition on the grounds that he was denied his constitutional right to conflict-free representation and that his waiver of that right was not voluntary or intelligent. Respondent Jones appeals the district court's decision. For the reasons stated below, the panel REVERSES the orders of the district court and REMANDS for entry of judgment consistent with this opinion.

**I. BACKGROUND**

---

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Pursuant to a search warrant, officers entered 15087 Ward Street in Detroit, Michigan on July 17, 1998. Office Keith Norrod, the first officer to enter the house, testified that Petitioner, who was seated by himself on a couch, reached to his right side and threw a brown paper bag across the room. Officer Gary Diaz, who followed Officer Norrod into the house, retrieved the bag, which was later found to contain 83.64 grams of powder containing cocaine. Officer Tyrone Spencer was outside the house providing security during the execution of the search warrant, and he observed a person he later identified as Kaerkye Williams ("co-Defendant"), Petitioner's brother, lean out of an upstairs window and throw a clear plastic bag to the ground. That bag was later found to contain 22.43 grams of a substance containing cocaine. The officers also found a digital scale, small zip-lock bags, a razor blade, a loaded assault pistol, a shotgun, and a loaded revolver on the main floor of the house.

Yarden Proctor, a cousin of Petitioner and the co-Defendant, testified that he lived at the house with Petitioner, the co-Defendant, and their mother, Proctor's aunt. He also testified that he was asleep upstairs when police executed the search warrant, that he did not throw anything out of the window, and that the co-Defendant was asleep when the police arrived. The co-Defendant testified that he was in bed when police arrived and that he did not throw anything out of the window. Petitioner testified that he lived at the house with his mother, his brother (the co-Defendant), and his cousin (Proctor). He further stated that there were no guns in the house, that $2,000 found on the mantle in the house was for the plumber, that there were not zip-lock bags, a scale, and a razor in the kitchen, and that he did not throw a bag on the floor when police arrived.

Petitioner and the co-Defendant were tried jointly in Michigan state court. They were both represented by Attorney Capers Harper. Although Petitioner did not object to the trial court's

procedure, the court did not address on the record the possibility of a conflict of interest arising from

the joint representation until after the jury had been selected.  The following colloquy then occurred

on the record:

> MR. HARPER:  For the record, your Honor, the court had a sidebar and asked that we make a record regarding any representation of both Rocelious and Kaerkye Williams and the court wished to voir dire them regarding my representation.
> THE COURT:  Mr. Kaerkye Williams and Mr. Rocelious Williams, I want to let you know, of course, that you have a right to each have your own attorney, and that there is always the possibility during a trial that there could be some conflicting defenses in a case.
> I ask you to let this court know whether you have considered that, talked to your attorney about that, and whether you are both in agreement that he represent both of you in this case?
> DEFENDANT ROCELIOUS WILLIAMS:  Yes.
> DEFENDANT KAERKYE WILLIAMS:  Yes.
> THE COURT:  Could each of you state your understanding of that on the record for me?
> Rocelious Williams?
> DEFENDANT ROCELIOUS WILLIAMS:  Me and Mr. Harper, we had a talk about it.  I understand what I was doing.  I don't think we will be in conflict.
> THE COURT:  You wish to have him represent both of you?
> DEFENDANT ROCELIOUS WILLIAMS:  Yes, I want to have him represent us.
> THE COURT:  And Mr. Kaerkye Williams?
> DEFENDANT KAERKYE WILLIAMS:  Yes.
> THE COURT:  That's your position, also?
> DEFENDANT KAERKYE WILLIAMS:  Yes.
> THE COURT:  You're requesting of this Court that you both be allowed to have the same attorney?
> DEFENDANT KAERKYE WILLIAMS:  Yes.
> MR. HARPER:  For the record, your Honor, there [sic] mother Miss Margie Williams is in court, we had this discussion on a number of occasions.
> Is that correct, Mrs. Williams?
> MRS. WILLIAMS:  That's correct.
> MR. HARPER:  You are also in agreement?
> MRS. WILLIAMS:  Yes.

JA at 68-70. On January 28, 1999, the jury convicted Petitioner of possession with intent to deliver 50 to 224 grams of cocaine, and the jury convicted the co-Defendant of possession of less than 25 grams of cocaine.

Petitioner filed an appeal with the Michigan Court of Appeals, appealing his conviction. Petitioner claimed that he was denied effective assistance of counsel when his attorney represented both him and the co-Defendant, that his agreement on the record to Mr. Harper's joint representation was not sufficient or valid because the trial court waited until after the jury had been selected and thus failed to comply with Michigan Court Rule 6.005(F), and that there were other constitutional violations that are not at issue for purposes of this appeal. On May 18, 2001, the Michigan Court of Appeals affirmed Petitioner's conviction, holding that Petitioner "made an informed waiver of his right to have separate counsel," and even if he did not, he "failed to establish a prima facie case of ineffective assistance of counsel." JA at 155. The court also held that even though the trial court did not comply with MCR 6.005(F), Petitioner did not object on the record to the procedure used by the court and hence the issue was forfeited. Furthermore, Petitioner could not obtain appellate review because his substantial rights were not affected since "the purpose and intent of [MCR 6.005(F)] were accomplished," and "there was strong evidence to support the verdict." JA at 156. Petitioner filed a delayed application for leave to appeal with the Michigan Supreme Court. That court denied the application on December 21, 2001, because it was "not persuaded that the questions presented should be reviewed." JA at 160.

Petitioner filed a habeas corpus petition on July 26, 2002. The issues raised in the petition were essentially the same as those raised at the Michigan Court of Appeals. The district court

granted the petition, holding that the state court's adjudication of Petitioner's claims resulted an in

unreasonable application of clearly established federal law as determined by the United States

Supreme Court. Specifically, the district court held that (1) Petitioner's claims were not procedurally

defaulted because compelling and extraordinary circumstances were present; (2) Petitioner's waiver

of his right to a separate attorney was not knowing, intelligent, and voluntary; and (3) Petitioner

demonstrated that an actual conflict of interest adversely affected his attorney's performance.

Respondent filed a timely appeal.

## II. ANALYSIS

### A. Standard of Review

This court applies a de novo standard of review to the district court's conclusions of law and

mixed questions of law and fact, and accordingly uses the same standard of review as the district

court. *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). The Antiterrorism and Effective

Death Penalty Act of 1996 dictates the standard of review for habeas petitions filed after April 26,

1996. 28 U.S.C. § 2254(d). The Supreme Court has held that

> [u]nder § 2254(d)(1), the writ may issue only if one of the following two conditions
> is satisfied – the state-court adjudication resulted in a decision that (1) "was contrary
> to . . . clearly established Federal law, as determined by the Supreme Court of the
> United States," or (2) "involved an unreasonable application of . . . clearly
> established Federal law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this court on a question of
> law or if the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts. Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The Supreme Court has further held that "contrary to" should be construed to mean diametrically different, opposite in character or nature, or mutually opposed and that the proper inquiry for the "unreasonable application" analysis is whether the state court decision was objectively unreasonable and not simply erroneous or incorrect. *Id.* at 409-11.

## B. Conflict of interest through joint representation

In a general ineffective assistance of counsel claim, a defendant must demonstrate that (1) the performance of his counsel was deficient, and (2) the deficient performance thereby prejudiced the defense and deprived the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The analysis is slightly different in conflict of interest cases. When there is an actual conflict of interest, prejudice will be presumed. *Id.* at 692. However, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). Thus, the Supreme Court has held that "[r]equiring or permitting a single attorney to represent codefendants . . . is not per se violative of constitutional guarantees of effective assistance of counsel." *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978).

In determining whether an actual conflict of interest exists, this circuit has held that

> We will not find an actual conflict unless appellants can point to *specific instances* in the record to suggest an actual conflict or impairment of their interests. . . . *Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action*, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical. . . . *There is no violation where the conflict is irrelevant or merely hypothetical*; there must be an actual significant conflict.

*United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000) (emphasis added) (internal quotations

omitted).  This circuit has further held that counsel's strategy will be "judged under the deferential

standard of review of counsel's performance prescribed in *Strickland* []."  *McFarland v. Yukins*, 356

F.3d 688, 706 (6th Cir. 2004).  *Strickland* dictates that judicial scrutiny of trial counsel's strategy and

performance "must be highly deferential":

> A fair assessment of attorney performance requires that every effort be made to
> eliminate the distorting effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct from counsel's perspective
> at the time. . . . [A] court must indulge in a strong presumption that counsel's conduct
> falls within the wide range of reasonable professional assistance . . . . A convicted
> defendant making a claim of ineffective assistance must identify the acts or
> omissions of counsel that are alleged not to have been the result of reasonable
> professional judgment.

*Strickland*, 466 U.S. at 689-90.  Accordingly, we note at the outset that the burden is a difficult one

for Petitioner to meet, as he must point to specific instances of actual conflict of interest and not rely

on mere speculation, second-guessing, and hindsight.

Under the *Williams* standard and other aforesaid Supreme Court precedent, it is clear that the

district court erred in holding that Petitioner demonstrated that an actual conflict of interest adversely

affected Mr. Harper's performance.  All of the conflicts cited by the district court and Petitioner are

either hypothetical or are not supported by the facts, and hence are not sufficient to grant habeas

relief.

The district court opinion at several times rehashes its conclusion that Petitioner was affected

by the dual representation because it prevented him from arguing that the co-Defendant possessed

both bags of cocaine, concluding that that was a strong and obvious defense.  However, in so

concluding, the district court relied on a case that is easily distinguishable from the instant case. In *McFarland v. Yukins*, this circuit held that trial counsel's dual representation resulted in an actual conflict of interest because counsel failed to point to the joint occupant of an apartment as the possessor of drugs. 356 F.3d 688, 708-10 (6th Cir. 2004). In that case, however, Paula McFarland was charged with possession of drugs, and there was "strong evidence" that Donna Reeves, the co-Defendant, controlled the drugs at issue, including the facts that (1) police received Crack Hotline complaints about "Donna"; (2) a confidential informant talked to "Donna," who stated she had drugs; (3) an agent working on the case referred to the bedroom in which the drugs were found as Reeves' room, and he referred to the second bedroom as McFarland's; (4) the same agent said a purse with a letter addressed to McFarland was found in the second bedroom, not the bedroom with the drugs. *Id.* at 708.

In the instant case, the district court cites no facts that would lead to the conclusion that to claim the co-Defendant was the sole possessor of the drugs was a strong and obvious defense. Much to the contrary, as the Michigan Court of Appeals pointed out, the facts strongly indicate that Petitioner was the possessor of the drugs. Indeed, an officer testified that when he entered the house, he saw Petitioner throw a bag across the room that was later found to contain 83.64 grams of a powder containing cocaine. Thus, *McFarland* is inapplicable, and Mr. Harper was wise to not raise such a frivolous defense. Certainly, his decision to not raise this defense does not satisfy the deferential standard afforded to defense counsel by *Strickland*.

The district court also held that the "joint representation *may* have led the jury to believe that Petitioner and his brother were a unit," that "the jury *might* have reasoned that Petitioner and his

brother adopted a common defense," and that because Petitioner and the co-Defendant faced charges that "differed significantly in severity" and the co-Defendant could have been charged with the same offense on an aiding and abetting theory, the co-Defendant had a strong incentive for proceeding to trial as rapidly as possible whereas Petitioner "might" have benefitted from a delay in trial and additional plea negotiations. JA at 226-27 (emphasis added). This sort of hypothetical statement is precisely the sort of evidence that will not support a Sixth Amendment violation per the aforementioned precedent.

The district court opinion also held that Mr. Harper elicited testimony suggesting that the seller of drugs on the day before the raid tended to incriminate Petitioner, who more closely fit the physical description. What the opinion omits, however, is that in the testimony in question, Officer Edmonds admitted that his description, in which the perpetrator had a light complexion, fit neither Petitioner nor the co-Defendant. This strategy was thus consistent with exonerating the co-Defendant *and* Petitioner. Hence, the fact that it might have "more closely fit" Petitioner certainly does not rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689-90.

Finally, the district court held that Mr. Harper's decision to call Proctor as a witness helped the co-Defendant but not Petitioner because "Proctor's testimony corroborated [the co-Defendant's] testimony and tended to make Petitioner appear to be the only guilty party." JA at 227. This reasoning fails on several levels. First, it is speculative. Second, the district court fails to notice that the strategy provided credibility to the common defense. Thus, because it could have helped Petitioner, the district court's reasoning was improper in light of *Strickland*.

Petitioner's claims regarding actual conflict are similarly unpersuasive. He first contends that the difference in the severity of the charges brought against Petitioner and the co-Defendant "might" make him look more culpable than the co-Defendant and lessen the risk of going to trial to the co-Defendant vis-a-vis Petitioner. Speculative claims such as this are improper in the instant case, as stated in the analysis regarding the district court opinion. Petitioner's other arguments reiterated those in the district court opinion, and they are discussed above.

The district court incorrectly applied precedent in arriving at the conclusion that there was an actual conflict that adversely affected Petitioner. Additionally, Petitioner raises no arguments that are persuasive regarding this issue. Under the jurisprudence of this circuit, Petitioner cannot show that an actual conflict of interest adversely affected his attorney's performance. Accordingly, his habeas petition must fail, and we need not address the other assignments of error raised by Respondent Jones.

## III. CONCLUSION

For the foregoing reasons, the panel REVERSES the orders of the district court and REMANDS for entry of judgment consistent with this opinion.