*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0475p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DAVID PATRICK LAKIN,

        *Petitioner-Appellant,*

    *v.*

WAYNE W. STINE, Warden,

        *Respondent-Appellee.*

No. 05-1388

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 96-75828—Arthur J. Tarnow, District Judge.

Argued: December 9, 2005

Decided and Filed: December 19, 2005

Before: MERRITT, MARTIN, and COLE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Margaret Sind Raben, GUREWITZ & RABEN, Detroit, Michigan, for Appellant. Jerrold E. Schrotenboer, OFFICE OF THE ATTORNEY GENERAL, Jackson, Michigan, for Appellee. **ON BRIEF:** Margaret Sind Raben, GUREWITZ & RABEN, Detroit, Michigan, for Appellant. Jerrold E. Schrotenboer, OFFICE OF THE ATTORNEY GENERAL, Jackson, Michigan, for Appellee.

———————————

**OPINION**

———————————

    BOYCE F. MARTIN, JR., Circuit Judge. David Patrick Lakin appeals the district court's denial of his petition for a writ of habeas corpus alleging constitutional error because he was forced to wear leg iron shackles during his trial in state court. The district court found that Lakin's due process rights were violated when he was forced to wear leg irons during his trial, but concluded that the error was harmless in light of the overwhelming evidence of Lakin's guilt. Consistent with the Supreme Court's analysis last Term in *Deck v. Missouri*, 125 S. Ct. 2007 (2005), we agree with the district court and hold that the shackling was constitutional error, but that it was nevertheless harmless in light of the overwhelming evidence of Lakin's guilt. We therefore AFFIRM the district court's judgment denying Lakin's petition for a writ of habeas corpus.

## I.

    Lakin was serving a twenty-to-thirty year prison sentence when he and four other inmates attempted to escape in January 1990. *See Lakin v. Stine*, 2000 WL 1256900, *1 (6th Cir. 2000) ("*Lakin I*"). The

inmates escaped by crawling through a storm drain pipe to reach the outside of the prison where they acted as if they were on a work detail. This Court previously summarized the facts as follows.

> Two corrections officers, Sheila Duncan and Danny Norman, drove over to the inmates in a state vehicle to determine if they were authorized to be there. During the encounter, the inmates assaulted the two officers, placed them into the vehicle and handcuffed them. The inmates then drove off in the vehicle, taking the handcuffed officers with them. After eluding law enforcement in a high-speed chase, Lakin and his fellow escapees surrendered after an ensuing chase. Lakin and his co-defendants were returned to prison and charged with kidnapping, prison escape, assault on a prison employee, and unlawfully driving away an automobile.

*Id.* Lakin was convicted on all counts. On appeal, the Michigan Court of Appeals addressed only one of Lakin's and his co-defendants's five claims — that the trial court failed to comply with applicable rules governing the defendants's decision to discharge counsel and represent themselves. Finding that reversal was not required, the court affirmed the convictions. Regarding all other claims, the court wrote: "We have carefully considered the remaining issues raised by defendants. However, we conclude they require neither reversal nor discussion." The Michigan Supreme Court declined discretionary review.

Lakin then filed a petition for a writ of habeas corpus in federal district court. The district court granted a conditional writ finding that Lakin's Sixth Amendment right to counsel was violated when he was denied the opportunity to consult with counsel outside of the presence of prison guards. This Court reversed and remanded. *See Lakin I*, 2000 WL 1256900. On remand, the district court addressed another of Lakin's claims — that he was denied a fair and impartial trial when the trial court prevented him from presenting a duress and necessity defense — and again issued a conditional writ. This Court again reversed and remanded. *Lakin v. Stine*, 80 Fed. Appx. 368 (6th Cir. 2003) ("*Lakin II*").

On the second remand, the district court addressed Lakin's remaining claims including the only claim now before this Court — that Lakin's due process rights were violated when he was forced to wear leg irons during his trial. Because the Michigan Court of Appeals provided no explanation for the basis of its denial of Lakin's claim, the district court "proceed[ed] with an independent review of this claim 'through the lens of § 2254(d).'" The district court concluded that Lakin's due process rights were violated because the trial court failed to conduct any inquiry into or make any findings regarding the necessity of the shackles. Nevertheless, the district court found that the error was harmless in light of "the overwhelming evidence of [Lakin]'s guilt presented at trial," and denied Lakin's petition for relief.

**II.**

A.      Standard of Review

Lakin's petition for a writ of habeas corpus was filed under 28 U.S.C. § 2254 and this Court must therefore apply the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C. § 2254(d). Pursuant to that section, a writ of habeas corpus may not be granted unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . ." 28 U.S.C. § 2254(d). To determine what constitutes clearly established law, this Court looks to the law as established by the Supreme Court's holdings and not its dicta. *See Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000) and *Yarborough v. Alvarado*, 541 U.S. 652 (2004)). Nevertheless, an explicit statement by the Supreme Court is unnecessary; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)). This Court reviews the district court's decision to deny the writ *de novo* and its factual findings for clear error. *Towns v. Smith*, 395 F.3d 251, 257 (6th Cir. 2005).

B.      Review of Supreme Court Law

Recently in *Ruimveld*, this Court conducted a "brief review of Supreme Court cases related to prejudicial trappings at trial." 404 F.3d at 1010-1012.  Just one month later, the Supreme Court issued its opinion in *Deck v. Missouri* addressing "whether shackling a convicted offender during the penalty phase of a capital trial violates the Federal Constitution." *Deck*, 125 S. Ct. 2007, 2009 (2005).  In *Deck*, the Supreme Court held "that the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, *unless* that use is justified by an essential state interest — such as the interest in courtroom security — specific to the defendant on trial." *Id.* at 2009 (quotations omitted and emphasis in original) (citing *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986) and *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970)).

Citing "deep roots in the common law," the Supreme Court held that "[t]he answer is clear: The law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Id.* at 2010.  The Court further stated that

> it is clear that this Court's prior statements gave voice to a principle deeply embedded in the law. We now conclude that those statements identify a basic element of the "due process of law" protected by the Federal Constitution. Thus, the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial.

*Id.* at 2012.[1]

Notwithstanding the constitutional rule, the Court noted that there will be cases "where these perils of shackling are unavoidable." *Id.* at 2014 (citation omitted).  The Court did not "underestimate the need to restrain dangerous defendants . . . or the need to give trial courts latitude in making individualized security determinations," but given shackles "prejudicial effect, due process does not permit the use of visible restrains if the trial court has not taken account of the circumstances of the particular case." *Id.*

In *Deck* itself, the Supreme Court applied these principles and rejected Missouri's argument that the trial judge acted within his discretion. *Id.* at 2015.  This argument, the Court wrote, "founders on the record's failure to indicate that the trial judge saw the matter as one calling for discretion.  The record contains no formal or informal findings." *Id.*  The absence of findings, according to the Court, does not meet the "case-by-case determination" that the due process clause requires. *Id.*[2]  Notwithstanding, the Court hypothesized that there might be "an exceptional case where the record itself makes clear that there are indisputably good reasons for shackling." *Id.*

Finally, the Supreme Court held that "the defendant need not demonstrate actual prejudice to make out a due process violation." *Id.*  Instead, harmless error analysis applies — that is, "[t]he State must prove

---

[1] The Supreme Court listed three "reasons that motivate the guilt-phase constitutional rule": (1) the criminal process presumes the defendant is innocent until proven guilty; (2) the Constitution guarantees a right to counsel and the use of physical restrains diminishes that right; and (3) judges must seek to maintain a dignified judicial process including respectful treatment of defendants. *Deck*, 125 S. Ct. at 2013.  The Court concluded that "[t]he routine use of shackles in the presence of juries would undermine these symbolic yet concrete objectives." *Id.*

[2] The trial judge gave as his reason for the shackling that Deck had already been convicted and that having him shackled would "take any fear out of" the juror's "minds." *Deck*, 125 S. Ct. at 2015.  The Supreme Court rejected these as insufficient because the trial judge did not explain any special reason for the jury to be fearful. *Id.*

"beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." *Id.* (second alteration in original) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

### C.     The Law Was Clearly Established

Although *Deck* was only recently decided, the Supreme Court made clear that the guilt phase rule was clearly established law prior to the date of the *Deck* decision. *Deck* addressed whether the guilt phase rule is applicable in the capital sentencing context. Furthermore, the Supreme Court stated on several occasions that the law has long forbidden the use of the shackles at trial. *Id.* at 2010 ("The answer is clear: The law has long forbidden routine use of visible shackles during the guilt phase . . . This rule has deep roots in the common law."); *see also id.* at 2012 ("[I]t is clear that this Court's prior statements [i.e., *Illinois v. Allen*, 397 U.S. 337 (1970) and *Holbrook v. Flynn*, 475 U.S. 560 (1986)] gave voice to a principle deeply imbedded in the law."). We therefore conclude that the principle that shackling a defendant at trial without an individualized determination as to its necessity violates the due process clause was clearly established long before *Deck* was decided.

### III.

As previously noted, the Michigan Court of Appeals consideration of the issue consisted of this statement: "We have carefully considered the remaining issues raised by defendants. However, we conclude that they require neither reversal nor discussion." Thus, as the district court did, we proceed with an independent review of the claim "through the lens of § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 639 (2003). This essentially requires this Court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).

Prior to trial, one of Lakin's co-defendants moved to have the defendants's leg irons removed during the trial.[3] In support of the motion, the defendant noted that he and his co-defendants had not caused any problems during pre-trial proceedings and suggested that the court conduct an inquiry into whether he and his co-defendants were a security risk. The district court did not immediately rule on the motion, but returned to it later when the following discussion took place:

> The Court:     While I was talking I might — I request some indication from the security officers as to their feeling about the removal of leg irons. Who's the head honcho so-to-speak?
>
> Corrections Officer Dilley:     Your Honor, by nature of the charges alone constitutes an escape risk and by having five or six corrections staff in here it's rather conspicuous to a to a civilian jury what these people are, you know —
>
> The Court:     How do you feel about leg irons?
>
> Corrections Officer Dilley:     I think they should remain on, Your Honor.
>
> The Court:     All right, then, they will remain on.

---

[3]The trial court treated any objection or motion asserted by one defendant as asserted by all defendants.

Defendant Onifer:        Okay, we will take exception to that for the record under the due process clause of the Fourteenth Amendment, the Sixth Amendment, due process under the Article I Section 17 and Article I Section 20 of the Michigan Constitution.

Based on this exchange, and a review of the record, we hold that Lakin's due process rights were violated. Like *Deck*, this record contains no formal or informal findings specific to *Lakin*, and the trial court did not engage in a "case-by-case determination" of the necessity for shackles. *Deck*, 125 S. Ct. at 2012-2015.

In prior cases, this Court has articulated the factors to be considered by trial courts in making shackling decisions. *See Kennedy v. Cardwell*, 487 F.2d 101, 110-11 (6th Cir. 1973). They include:

(1) the defendant's record, his temperament, and the desperateness of his situation; (2) the state of both the courtroom and the courthouse; (3) the defendant's physical condition; and (4) whether there is a less prejudicial but adequate means of providing security.

*United States v. Waagner*, 104 Fed. Appx. 521, 526-27 (6th Cir. 2004) (unpublished opinion) (citing *Kennedy v. Cardwell*, 487 F.2d 101, 110-11 (6th Cir. 1973)). The record below indicates that the trial court did not consider any of these factors; rather, the trial court simply deferred to the corrections officer's request. Although a trial court might find a corrections officer's opinion highly relevant to answering the ultimate inquiry as to whether shackling is necessary in a particular case, an individualized determination under the due process clause requires more than rubber stamping that request. A corrections officer's preference does not excuse the district court from conducting the appropriate inquiry. Nor does the convenience of shackling a defendant justify its use. *Estelle v. Williams*, 425 U.S. 501, 505 (1976). Furthermore, this Court has expressed a preference for the use of guards in light of the inherent prejudice attendant to shackling.

The use of guards for security purposes, when wisely employed, provides the best means for protecting a defendant's fair trial right and only in rare cases would greater security precautions be warranted. Since guards can be strategically placed in the courtroom when more than normal security is needed and can be hidden in plainclothes, the jury never need be aware of the added protection so that no prejudice would adhere to the defendant.

*Kennedy*, 487 F.2d at 108-09 (footnote omitted).

On appeal, the State essentially argues that there is no better justification for the shackling than the simple fact that Lakin was charged with escape. The risk of escape at trial is no doubt a significant factor for a trial court to consider in making a shackling determination. "But any such determination should be case specific; that is to say, it should reflect particular concerns, say special security needs or escape risks, related to the defendant on trial." *Deck*, 125 S. Ct. at 2015. Lakin was on trial for attempted escape, but that fact alone, is not determinative. The nature of the charges against a particular defendant cannot themselves provide the entire justification for shackling; rather, all of the relevant factors must be considered, including alternative means of provide a safe and fair trial.

In *Deck*, for example, the shackling took place at the penalty phase, following a trial where the defendant was convicted of *capital murder*. *Id.* at 2009-10. Thus, unlike Lakin who was presumed innocent, Deck stood before the jury as a convicted murderer. Nevertheless, the Supreme Court held that the trial court's justification — that Deck "has been convicted" and that the shackles would "take any fear out of" the juror's "minds" — was insufficient because it made no findings, did not find any special risk of escape, did not cite any special reason for fear, and did not explain why it could not arrange to use shackles that the jury could not see (which were used at the trial). *Id.* at 2015. A per se rule that permitted shackling

those defendant's merely *charged* with certain crimes such as escape or murder would run afoul of the individualized determination that the due process clause requires.[4]

Finally, we note that the circumstances of this case provide additional cause for trial courts to make reasoned findings on the record: Lakin and his co-defendants represented themselves. Thus, Lakin was forced to make his case in front of the jury while shuffling about the courtroom due to the leg irons restricting his movement. When a defendant chooses to represent himself, a trial court should be particularly attuned to the negative impact on the presumption of innocence and a defendant's credibility before the jury.[5] When a shackled defendant represents himself, the jury is faced with a constant reminder that the defendant is shackled as he makes statements, questions witnesses, and introduces evidence. The presence of shackles on a man pleading his case is hard to ignore and creates a significant risk that he will be prejudged and can eviscerate the presumption of innocence guaranteed to all defendants.

## IV.

Due to the nature and inherent prejudice of shackling, *see Deck*, 125 S. Ct. at 2015 (quoting *Holbrook*, 475 U.S. at 568), a "defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove beyond a reasonable doubt that the shackling error complained of did not contribute to the verdict obtained." *Id.* at 2015 (citation and alteration omitted). Thus, if the State can prove that the shackling was harmless error, this Court must deny Lakin's petition.

In *Ruimveld*, this Court applied a form of harmless error analysis and found that the shackling was not harmless error. 404 F.3d at 1017.[6] The Court reasoned that the defendant had carried his burden "by showing the harm to the presumption of innocence that the Supreme Court has found to be inherent in indicia of guilt such as shackles, by showing that there was no good reason for the shackling, [and] by showing that his was a close case based on purely circumstantial evidence . . ." *Id.* at 1017-18.[7]

*Deck* makes clear, however, that it is the State's burden, and not the defendant's. Here, the State makes one argument: the evidence of guilt is overwhelming. This point is well taken. Witnesses testified that they observed Lakin and his co-defendants outside the prison without justification and the guards who were assaulted and kidnapped testified against Lakin. Lakin was observed and chased while he drove the getaway vehicle at upwards of eighty-five miles per hour and he was captured after the vehicle was stopped. Unlike *Ruimveld*, where the evidence was weak and purely circumstantial, the evidence against Lakin is

---

[4]The State's argument is basically that Lakin was being tried for escape and therefore shackling was appropriate. Its brief states: "Petitioner . . . was being tried with four other similar inmates for kidnapping, assaulting a prison employee, and escape. What more is needed?" Respondent's Br. at 12. *Deck* clearly rejects this reasoning. Later, the State asks "What Supreme Court case has ever said that criminal defendants with even such egregious records may not wear leg irons during trial?" Respondent's Br. at 16. These questions miss the point. All of the State's assertions on Lakin's dangerousness and flight risk may be true; nevertheless, the trial court made no findings on the matter for this Court to consider.

[5]Moreover, an additional concern in this case and any other escape trial is the potential that shackles function as a form of propensity evidence. That is to say, shackles already indicate a concern that a defendant will be violent or attempt to escape and when a defendant is already on trial for escape, viewing a shackled defendant will likely weigh heavily in the minds of jurors. Of course, a trial court need not ignore the reality of the situation and the fact that a defendant has tried to escape already is a highly probative factor for the trial court to consider in making a shackling determination. Nevertheless, an escape case provides heightened justification for the requirement that the trial court make reasoned individualized findings on the record, demonstrating a special need for shackling, in order to guarantee defendants their fair day in court.

[6]The Court stated that harmless error applied but held that the defendant, "bears the burden of depriving the appellate court of a fair assurance that the error was *not* outcome determinative." *Id.* at 1017 (internal quotation marks and citation omitted and emphasis in original). This was pre-*Deck*, and of course, *Deck* places the burden on the State to prove harmless error.

[7]The Court also questioned what if anything a defendant could ever do to show that the shackling affected his case. In *Deck*, the Supreme Court took this concern into account and placed the burden on the State to prove the harmlessness of the error.

overwhelming. Lakin has not presented any contrary evidence to challenge this conclusion. Despite the substantial risk of prejudice that shackles pose, we are compelled to conclude that the error was harmless in this case due to the overwhelming evidence against Lakin.

**V.**

For the foregoing reasons, we affirm the district court's judgment denying Lakin's petition for relief.