RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0145p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DANTA DAVIS,

　　　　　　　　*Petitioner-Appellant,*

　　　　*v.*

DENNIS STRAUB, Warden,

　　　　　　　　*Respondent-Appellee.*

No. 03-2262

＞

Filed: April 21, 2006

Before: MERRITT and ROGERS, Circuit Judges; HOOD, Chief District Judge.[*]

## AMENDED ORDER

This matter comes before the court upon the petition for rehearing *en banc*, filed by counsel for the appellant, and the response of the appellee thereto. The petition has been circulated not only to the original panel members but also to all other judges of the court in regular active service, less than a majority of whom have voted in favor of rehearing en banc. Accordingly, the petition has been returned to the panel for decision.

Upon consideration of the petition and the response, the panel concludes that the issues raised therein were fully considered upon the original submission and decision of the case, and the request for rehearing is therefore denied.

---

[*] The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

BOYCE F. MARTIN, JR., Circuit Judge, with whom DAUGHTREY, MOORE, COLE, and CLAY, Circuit Judges, join, dissenting from the denial of rehearing en banc. I respectfully dissent from the denial of rehearing en banc in this case because I believe that this Court's recent decisions have adopted an overly narrow interpretation of the "unreasonable application" prong of AEDPA's Section 2254(d)(1). These decisions have rendered the "unreasonable application" prong indistinguishable from the "contrary to" prong and, in my opinion, such a narrow reading raises grave constitutional concerns and undermines the ability of the federal courts to reach the full merits of constitutional issues. This case is a prime example of the results of such an overly narrow reading of AEDPA. For these reasons and for the reasons so ably articulated by Judge Merritt in his dissent from the panel decision, *Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005) (Merritt, J., dissenting), I respectfully dissent from the Court's decision to deny rehearing en banc.

## I.

Under AEDPA, we are limited to granting relief where a petitioner's state court "adjudication . . . was contrary to, or . . . an unreasonable application of, clearly established Federal [Supreme Court] law." 28 U.S.C. § 2254(d). This means that to determine what constitutes "clearly established" law, we look to the law established by Supreme Court holdings, and not its dicta. *Lakin v. Stine*, 431 F.3d 959 (6th Cir. 2005) (citing *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005)); *see also Yarborough v. Alvarado*, 541 U.S. 652 (2004); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). An explicit statement from the Supreme Court is not necessary; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)). Thus, "clearly established" law includes not only bright-line rules, but also "the governing legal principle or principles set forth by the Supreme Court" designed to apply to a range of factual contexts. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *see also Williams*, 529 U.S. at 407 (observing that an unreasonable application of clearly established federal law occurs when a state court decision "unreasonably refuses to extend [a legal] principle to a new context where it should apply"). "A legal principle, by definition, applies to diverse factual scenarios. And those factual scenarios can differ in innumerable ways, so long as they are analogous on the point to which the legal principle applies." *Robinson v. Polk*, — F.3d —, 2006 WL 894971 (4th Cir. 2006) (King, J., dissenting from the denial of rehearing en banc); *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (holding that "a federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced" (internal quotation marks omitted)). Consequently, federal courts have found clearly established law even where Supreme Court precedent does not rest factually "on all fours." *Lewis v. Johnson*, 359 F.3d 646, 655 (3d Cir. 2004); *Hart v. Attorney Gen. of the State of Florida*, 323 F.3d 884, 893 n.16 (11th Cir. 2003); *Burdine v. Johnson*, 262 F.3d 336, 354 (5th Cir. 2001); *Torres v. Prunty*, 223 F.3d 1103, 1110 (9th Cir. 2000).

Reading the "unreasonable application" clause of Section 2254(d)(1) to require the facts between cases to be on all fours would conflate the clause with the "contrary to" clause. *See Williams*, 529 U.S. at 405 (stating that the two clauses must be given "independent meaning"). The unreasonable application prong requires a more nuanced approach than the panel majority gives it and in the process, the Court has failed to give the clauses "independent meaning." *Id.* As Judge Merritt remarked, the panel majority's "approach apparently looks first at the facts of the case, extracts the narrowest possible legal rule to fit that situation, and then, upon predictably finding no Supreme Court precedent resting on all fours, uncovers no clearly established law." *Davis*, 430 F.3d at 294 (Merritt, J., dissenting). This limited inquiry is wrong. Because the facts of cases will always differ in some manner, where a state court "unreasonably refuses to extend [a legal] principle to a new context where it should apply," *Williams*, 529 U.S. at 407, that error will not necessarily "strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). Instead, to determine the extent to which

clearly established legal principles, such as the two principles in this case, apply to govern diverse factual scenarios, we must determine how general the principles are and whether they are applicable to new factual situations. Clearly established law does not mean "a case in the Supreme Court directly on point on the facts, just exactly like the case you have before you." *Davis*, 430 F.3d at 297 (Merritt, J., dissenting). Justice Kennedy characterized the proper inquiry, which has been adopted by the Court, in *Wright v. West*, 505 U.S. 277, 308-09 (1992) (Kennedy, J., concurring):

> If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule . . . Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent.

*See also Davis*, 430 F.3d at 292 (Merritt, J., dissenting) (acknowledging that the Supreme Court has adopted the "spectrum of abstraction of *Teague v. Lane*, 489 U.S. 288 (1989), to determine whether a particular legal principle was clearly established at the relevant time"). "Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough*, 541 U.S. at 664.

For example, as Judge Merritt discussed, the ineffective assistance of counsel standard is a broad rule whose application to new factual situations still constitutes clearly established law. Consequently, I think we can all agree that under the Supreme Court's jurisprudence, an attorney sleeping through trial would provide ineffective assistance of counsel. A case where the attorney listened to music on headphones or played video games during trial would likewise constitute ineffective assistance. We would not review the case and determine, as I believe the panel majority's approach would dictate, that the Supreme Court has not yet found that listening to music or playing video games during trial constitutes ineffective assistance of counsel and therefore find no clearly established federal law on point. This hypothetical illustrates the absurdity of the narrow approach and the constraints it imposes on federal courts' ability to remedy constitutional violations.

The result is that this Court's narrow reading of the unreasonable application prong offends the judicial power under Article III. Under this narrow approach, the Court's "case-by-case" view is turned on its head — now, it is not "the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent," *Wright*, 505 U.S. at 309 (Kennedy, J., concurring), but rather the infrequent case is the one where this Court finds any precedent on point. Such an approach yields the authority to interpret federal law to the state courts and uses Section 2254(d)(1) as a "crutch." *Davis*, 430 F.3d at 298 (Merritt, J., dissenting); *see also Williams*, 529 U.S. at 378-79 (Stevens, J., dissenting in part) ("At the core of [the judicial] power is the federal courts' independent responsibility — independent from its coequal branches in the Federal Government, and independent from the separate authority of the several States — to interpret federal law. A construction of AEDPA that would require the federal courts to cede this authority to the courts of the States would be inconsistent with the practice that federal judges have traditionally followed in discharging their duties under Article III of the Constitution."); *Cooper v. Aaron*, 358 U.S. 1, 18 (1958) (describing "the basic principle that the federal judiciary is supreme in the exposition of the law of the Constitution" as "a permanent and indispensable feature of our constitutional system"); *see also Robinson*, — F.3d —, 2006 WL 894971 (King, J., dissenting from the denial of rehearing en banc) ("While I entirely agree that our review under AEDPA must be deferential, to read and apply AEDPA's provisions so narrowly is essentially to abdicate our responsibility to use the Great Writ when a state court has unreasonably applied clearly established federal law as determined by

the Supreme Court."). Federal judges may only be umpires calling balls and strikes but Article III puts us in the game and behind home plate. This Court's reading of AEDPA relegates us to spectators with "no adjudicatory function to perform." *United States v. Klein*, 80 U.S. 128, 146-47 (1871); *United States v. Sioux Nation of Indians*, 448 U.S. 371, 392 (1980); *see also Yakus v. United States*, 321 U.S. 414, 468 (1944) (Rutledge, J., dissenting); *Davis*, 430 F.3d at 297 (Merritt, J., dissenting) ("Such a reading of § 2254(d)(1) renders it unconstitutional by preventing our Court from giving our independent judgment on the legal effect of the evidence before us and by leaving us 'no adjudicatory function to perform.'"). This is hardly the judicial power authorized under the Constitution where "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

Not only does this Court's reading of Section 2254(d)(1) offend Article III, but it also suspends the writ of habeas corpus in violation of Article I, Section 9 of the Constitution. This Court's interpretation of Section 2254(d)(1) "so broadly circumscribes the writ of habeas corpus that we cannot reach the full merits of the constitutional issue[s] before us." *Davis*, 430 F.3d at 299 (Merritt, J., dissenting). "The Suspension Clause of the Constitution, which carefully circumscribes the conditions under which the writ can be withheld, would be a sham if it could be evaded by congressional prescription of requirements *other than the common-law requirement of committal for criminal prosecution* that render the writ, though available, unavailing." *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 2672 (2004) (Scalia, J., dissenting) (emphasis in original).[1] Under this Court's narrow standard the writ is available in theory but illusory in fact.

## II.

In this case, a proper and constitutional interpretation of Section 2254(d)(1) would require the writ to issue. Two such clearly established principles apply here: (1) Under the Sixth Amendment, a state may not arbitrarily deny a defendant the right to call a witness whose testimony is relevant and material to the defense, *Washington v. Texas*, 388 U.S. 14, 23 (1967), and (2) a witness may not invoke the self-incrimination privilege unless the danger is "real and probable," not "imaginary and unsubstantial," *Brown v. Walker*, 161 U.S. 591, 608 (1896), and "where there can be no further incrimination, there is no basis for the assertion of the privilege," *Mitchell v. United States*, 526 U.S. 314, 326 (1999). The majority concluded that these principles were not clearly established because the Supreme Court has not applied them in a case with indistinguishable facts. This approach is contrary to Supreme Court precedent applying general principles to new factual situations and I would hold that the Michigan Court of Appeals' decision unreasonably applied clearly established federal law under the Fifth and Sixth Amendments.

A witness to the murders at issue, Jourdan, made a series of pre-trial statements which indisputably place Jourdan at the scene of the crime and strongly tend to exonerate petitioner Davis, who has consistently maintained his innocence. Jourdan's pre-trial statements place full blame on a person named Bell who has confessed to the murders. *See Davis*, 430 F.3d at 293 (Merritt, J.,

---

[1] In the *Federalist Paper No. 84*, by Alexander Hamilton, he wrote that:

> Independent of those [answers] which relate to the structure of the government, we find the following: .... Section 9 [Article I] clause 2 — "The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it ...." [T]he practice of arbitrary imprisonments, have been, in all ages, the favorite and most formidable instrument of tyranny. The observations of the judicious Blackstone, in reference to the latter, are well worthy of recital: ... "confinement of the person, by secretly hurrying him to jail, where his sufferings are unknown or forgotten, is a less public, a less striking, and, therefore a more dangerous engine of arbitrary government." And as a remedy for this fatal evil he [Blackstone] is everywhere peculiarly emphatical in his encomiums on the habeas-corpus act, which in one place he calls "the Bulwark of the British Constitution."

dissenting) ("It was clear from his statements that he had nothing to do with the murder and neither did Davis whose behavior Jourdan observed."). When Davis called Jourdan to the stand, the prosecutor brought to the court's attention Jourdan's Fifth Amendment privilege against self-incrimination. Jourdan exercised that privilege by refusing to testify. Jourdan was never threatened with prosecution. Even if he were threatened with prosecution, his prior statements would *already* be admissible against him — thus, his presence at the crime scene was already overwhelmingly established, and his testimony could do no further harm. Nevertheless, Jourdan was allowed to invoke the privilege. Davis was not permitted to introduce eyewitness testimony that probably would have exonerated him of the murders, in violation of his Sixth Amendment right to do so, and he was then convicted and sentenced to multiple concurrent life sentences.

The majority's narrow construction of AEDPA prevents this court from granting the writ of habeas corpus, despite the aforementioned "clearly established" principles that should be applied to require a new trial at which Davis would be allowed to put Jourdan's exculpatory testimony before the jury.

> As the Supreme Court foresaw in *Walker* and *Mitchell*, there reaches a point where a piece of evidence — in this case Jourdan's presence at the scene of the crime — which all parties agree is only incriminating in the most minimal and remote way, is so overwhelmingly and definitively established that it cannot be constitutionally used to stonewall introduction of other evidence that is highly exculpatory of a criminal defendant. The Fifth Amendment may not be so prompted and used as a shield for the flaw in the state's case, [or] used in such a mechanistic way that it subsumes a criminal defendant's Sixth Amendment right to present a defense.

*Davis*, 430 F.3d at 294 (Merritt, J., dissenting). The governing principles discussed above align this case with Supreme Court precedent, and it was unreasonable for the Michigan Court of Appeals to decline to apply it here.

## III.

Judge Merritt said it best. "The majority's decision achieves the unfortunate trifecta of misapplying the Supreme Court's jurisprudence under 28 U.S.C. § 2254(d)(1), gutting the Article III judicial power while 'suspending' the writ of habeas corpus, and stranding a probably innocent inmate in prison for life." *Davis*, 430 F.3d at 291 (Merritt, J., dissenting). The Great Writ, what Blackstone called "the Bulwark of the British Constitution," the *only* writ named in the United States Constitution, is not deserving of such an undistinguished death. I dissent from the Court's decision denying rehearing en banc to correct these errors.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green

_____

Clerk