DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the April 25, 2005 judgment of the Williams County Court of Common Pleas, which sentenced appellant, Scott T. Mitchell, following his conviction by a jury of two counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A)(B)(3). Upon consideration of the assignments of error, we reverse the decision of the lower court in part and affirm in part. Appellant asserts the following assignments of error on appeal:
 {¶ 2} "I. The trial court improperly denied the defendant's request to remove his handcuffs during trial.
 {¶ 3} "II. The trial court erred when it sentenced the defendant to the maximum sentence.
 {¶ 4} "III. The trial court erred when it sentenced the defendant to consecutive sentences."
 {¶ 5} Appellant was convicted of two counts of unlawful sexual conduct with a minor, in violation of R.C.2907.04(A)(B)(3). He was sentenced to maximum sentences of five years on each count, which were to be served consecutively.
 {¶ 6} The following evidence was submitted at trial. The victim was appellant's 13-year-old niece, who at the time was under stress due to family problems. The charges against appellant arose out of a sexual relationship with the victim over a four-month period beginning in April 2004 and continuing until September 1, 2004, while appellant was on parole for a prior felony sex offense. The victim testified that she and appellant engaged in various sexual acts while at the home of her grandparents and in appellant's car. The victim recalled conversations with appellant about her age because he was concerned being sent away for life if anyone found out what was going on. Appellant directed her not to tell anyone.
 {¶ 7} While the grandparents denied that anything could have happened at their home, they, another aunt and uncle, and appellant's girlfriend testified that they noticed that the victim began to call and talk to appellant a significant amount of time. The victim's aunt had also overheard the victim make inappropriate comments in front of her uncles.
 {¶ 8} The victim finally revealed the molestation when the victim's friend raised concerns with her mother, who in turn relayed the concerns to the victim's mother. When confronted, the victim admitted to the sexual activities. The victim did not intend to disclose what was going on because she thought she loved appellant and that he loved her.
 {¶ 9} After the police were involved, the victim led the investigating officer and a social worker to a clearing in a wooded area where the last encounter occurred on August 26, 2004. The officer discovered faint tire impressions where a vehicle had driven through the tall grass back into the woods. The social worker testified that the victim had stated at the time that while appellant was driving away from the area, she performed fellatio on him and he ejaculated when they stopped at a parking lot. She had further stated that appellant had cleaned himself with a red rag. She indicated that the rag and a box of condoms were stored in the glove compartment of appellant's car. At trial, the victim recalled telling someone how appellant used a rag to clean himself every time they were in the car, but she could not recall the events regarding the rag at trial. She could only recall that there was a red rag, but not when appellant used it.
 {¶ 10} The victim also testified regarding an early encounter with appellant on July 17, 2004. He began fondling the victim and then attempted to insert his fingers into her vagina. When he was unable to do so, he stuck his fingers in his mouth and then tried to do it again. He then tried to have vaginal intercourse with her, but he was unable to do so. Afterward, appellant asked for a pair of the victim's underwear to keep and she gave him the pink underwear she had been wearing that day. The victim never told the social worker or officer investigating the crimes nor testified at the parole hearing about this incident. However, the victim testified at trial that she believed that she neglected to tell someone because she was nervous and could not tell all of the facts clearly. The investigating social worker also testified that child victims usually cannot give a full and direct account of events all at once.
 {¶ 11} After interviewing the victim and investigating the wooded area, the investigating officer immediately secured appellant's car. Another officer search appellant's home that same day and found a pair of pink underwear nailed to the wall next to appellant's bed. At a later search of the car, an officer found a red rag, a box of unopened condoms, and a tube of KY jelly in the glove compartment.
 {¶ 12} A forensic scientist testified regarding the DNA evidence. DNA was taken from a semen stain on the red rag found in appellant's automobile and compared to appellant's DNA. The DNA from the rag matched appellant's DNA. DNA was also taken from an amylase stain on the pink underwear found in appellant's room. A mixture of DNA partial profiles was found in the sample. The scientist determined that the DNA mixture was from the victim and appellant. The probability of an expected match with appellant's DNA was determined to be one in 81,040 individuals.
 {¶ 13} An investigator for the corrections center of northwest Ohio testified that he recorded all 30 calls from the center to the homes of appellant's parents and girlfriend from September 16, 2004, through the end of the month. During one of the conversations with his brother, appellant told his brother that the victim had talked him into things and then asked the brother to go into appellant's room and get rid of a pair of pink underwear with the word "sexy" on them if they are still there because they belonged to the victim. In another conversation, appellant's brother reported that the underwear was no longer there. During that second conversation, appellant spoke to both his father and brother about the victim. Appellant admitted that she had given him the underwear. He also stated that he could not stop himself and did not understand why he did what he did. He also repeatedly made comments to his girlfriend such as: "I don't know why I do things I do. I don't know why I do it. * * * I didn't pursue it, if that makes any difference. It ain't like it was something that I went out after, out looking for it." However in various conversations, appellant denied sexual contact with the victim.
 {¶ 14} Appellant's girlfriend testified on appellant's behalf. She began a relationship with appellant in late April 2004, shortly after meeting him. She had kept a diary of the dates she and appellant had been together, but none of the dates gave him an alibi. Although the victim could not remember seeing any tattoos or unusual markings on appellant, his girlfriend testified that that appellant has three large tattoos of skulls on his outer right thigh. She also testified that she had seen the victim and her friend sitting in appellant's car on August 22, 2004. However, she also admitted that she was still in love with appellant even if he had done the things the victim claimed. She had paid counsel to represent appellant at the parole hearing and gave him spending money while he was incarcerated.
 {¶ 15} In his first assignment of error, appellant argues that he was denied a fair trial because the court erroneously denied appellant's request to remove his handcuffs during the trial.
 {¶ 16} In the judge's chambers at the start of appellant's trial, appellant's counsel requested that appellant be allowed to attend the trial without chains because of the prejudice the chains would cause. Appellant's counsel stated that he did not know if appellant was a flight risk.
 {¶ 17} A sheriff's deputy testified before the court that he had known appellant for 25 years. He recalled that appellant had been a "runner" in his early days, that he would flee automobiles on foot, and that officers had to chase him. The officer also testified that appellant had a short fuse and could be violent.
 {¶ 18} The state also provided information on appellant's prior offenses: he had been convicted in the late 1980s of aggravated burglary and robbery in Florida. He also had been convicted of a prior offense of gross sexual imposition for which he was released on parole in March 2004. The offense at issue occurred in April 2005. In October 2004, appellant's parole was revoked and appellant has been incarcerated since that time. As of January 2005, while appellant was an inmate at the Correctional Center of Northwest Ohio, the officer who testified had not heard that appellant had caused any problems. Following this discussion, the court denied appellant's motion. Appellee has attached to its brief a copy of an article that appeared in The Bryan Times on April 21, 2005. This article is not a part of the record of appeal and, therefore, we hereby order that it be severed from appellee's brief. Appellee's arguments based on the article will not be considered by this court.
 {¶ 19} Courts have long recognized a defendant's right to the "physical indicia of innocence" under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.Kennedy v. Cardwell (C.A.6, 1973), 487 F.2d 101, 104, certiorari denied (1974), 416 U.S. 959, and Birt v. Montgomery
(D.C.Ga., 1982), 531 F.Supp. 815, 819, certiorari denied (1984),469 U.S. 874. Because the image of seeing a defendant in restraints negatively affects the jury's ability to presume the defendant's innocence, restraints should only be used in cases where they are necessary to prevent violence or escape. Illinoisv. Allen (1970), 397 U.S. 337, 344; Woodards v. Cardwell
(C.A.6, 1970), 430 F.2d 978, 982, certiorari denied (1971),401 U.S. 911, and State v. Franklin, 97 Ohio St.3d 1,2002-Ohio-5304 at ¶ 79, certiorari denied (2003), 539 U.S. 905. However, the determination of whether to use restraints must be left to the discretion of the trial court because the court must weigh the defendant's right to a fair and impartial trial against the need to protect the people involved in the judicial process and prevent the defendant's escape. The court is in the best position to assess the defendant's conduct inside and outside the courtroom to make this determination. Woodards v. Cardwell,
supra; Birt v. Montgomery, supra, and State v. Franklin,
supra.
 {¶ 20} On appeal, the appellate court presumes that there was prejudice to appellant and determines whether there was sufficient justification for the use of restraint and that there was no less drastic alternative available. Kennedy v. Cardwell,
supra, at 107. The appellate court will not reverse the trial court's decision, however, unless it determines that the trial court abused its discretion. State v. Woodards (1966),6 Ohio St.2d 14, 23, certiorari denied (1966), 385 U.S. 390. "[S]ound discretion has long meant a discretion that is not exercised arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. Langnesv. Green, 282 U.S. 531, 534." Woodards v. Cardwell, supra. Even though the decision is discretionary, the trial court must state the facts it considered on the record to enable the appellate court to review the decision. State v. Morgan (1992),84 Ohio App.3d 229, 231-232, and State v. Carter (1977), 53 Ohio App.2d 125, 132.
 {¶ 21} In this case, we find that the court relied in part upon information about appellant's distant past conduct. Even though we question the appropriateness of relying upon such dated information, we find that the trial court did not abuse its discretion in this case because the facts taken as a whole justified the use of restraints. Appellant had a history of criminal activity, evading capture, and a parole violation. In addition, the trial court had the opportunity to observe appellant's demeanor in prior hearings.
 {¶ 22} Furthermore, since the evidence of guilt in this case was overwhelming, any error relating to conducting a trial while appellant was handcuffed was harmless error. Crim.R. 52(A) andState v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, at ¶ 15.
 {¶ 23} Therefore, we find appellant's first assignment of error not well-taken.
 {¶ 24} In his second and third assignments of error, appellant argues that the trial court erred when it sentenced him to maximum and consecutive sentences. Appellant argues that the court imposed maximum sentences without making the necessary findings required by R.C. 2929.14(C) and imposed consecutive sentences without making the necessary findings required by R.C.2929.14(E)(4) and stating its reasoning to support those findings.
 {¶ 25} In this case, the trial court relied on R.C.2929.14(C) and (E) when sentencing appellant even if the court erred in applying the requirements of the statute. Because these sections have been held unconstitutional by the Ohio Supreme Court in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, appellant's sentence is void. The sentence is hereby vacated and the case remanded for resentencing pursuant to State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855. Appellant's second and third assignments of error are well-taken.
 {¶ 26} Having found that the trial court did, in part, commit error prejudicial to appellant and that substantial justice has not been done, the judgment of the Williams County Court of Common Pleas is reversed in part and affirmed in part. We hereby reverse the sentencing judgment and remand the case to the trial court for resentencing. In all other respects, the judgment is affirmed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT REVERSED, IN PART, AND AFFIRMED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J. Parish, J. concur.
 Skow, J. Concurs in Judgment Only.