[Cite as *State v. Davis*, 2012-Ohio-1225.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                         :

    Plaintiff-Appellee                :            C.A. CASE NO. 2011 CA 15

v.                                    :            T.C. NO.    09CR719

JAY A. DAVIS                          :            (Criminal appeal from
                                                   Common Pleas Court)
    Defendant-Appellant          :

                                      :

. . . . . . . . . .

## O P I N I O N

Rendered on the ____23rd____ day of ____March____, 2012.

. . . . . . . . . .

LISA M. FANNIN, Atty. Reg. No. 0082337, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
    Attorney for Plaintiff-Appellee

MICHAEL C. THOMPSON, Atty. Reg. No. 0041420, 5 N. Williams Street, Wright-Dunbar Business Village, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

    **{¶ 1}** Defendant-appellant Jay Davis appeals from his conviction and sentence for felonious assault. For the following reasons, the judgment of the trial court is affirmed.

I

**{¶ 2}** On June 12, 2009, Davis was being held in an isolation cell in the Clark County Juvenile Detention Center. Officer John Bass, a Department of Youth Services (DYS) employee, checked on Davis a few times that evening without any problems. After one such check, Bass returned to the control room. A few minutes later, Davis's monitor went off because he was yelling loudly in his cell. Bass's supervisor Brandon Weathers, also a DYS employee, twice asked Davis over the intercom to be quiet. Because Davis continued yelling and cussing, Weathers went to the cell to check on him.

**{¶ 3}** At the cell, Weathers again asked Davis to calm down, but Davis responded with more cussing. Weathers asked Bass to unlock the cell from the control room. When the cell door opened, Davis burst out and attacked Weathers. Seeing the attack on a monitor in the control room, Bass called over the intercom for other staff members to help Weathers. Two other staff members arrived, ended the attack, and returned Davis to his cell. On the floor outside the cell, one of them found a "shank" that Davis made from a comb.

**{¶ 4}** Weathers's glasses were broken, and he had blood on his shirt and face. Weathers complained of pain in his neck and in his right knee, and he was limping. A co-worker drove Weathers to the hospital soon after the incident, and he was referred to an orthopedic surgeon. Despite surgery and physical therapy, Weathers continued to experience pain in his knee at the time of trial.

**{¶ 5}** A complaint was filed in the Clark County Common Pleas Court, Juvenile Division, alleging that Davis was delinquent by reason of felonious assault and

assault. Following an amenability hearing, Davis was bound over to the Clark County Common Pleas Court, General Division, to be tried as an adult. He was indicted on one count of felonious assault, which carried a specification that he committed the crime while in a school safety zone or towards a person in a school safety zone, and one count of assault, which carried a specification that Davis committed the offense against a DYS employee who was acting in the course of his employment and while Davis was in the custody of DYS. As used in Title 29 of the Ohio Revised Code, "'[s]chool safety zone'" consists of a school, school building, school premises, school activity, and school bus. R.C. 2901.01(C)(1).

{¶ 6} After Davis was bound over, his attorney was allowed to withdraw because Davis threatened to physically harm him. With Davis represented by new counsel, the parties announced on the morning of trial that they had reached a plea agreement. However, as the trial court tried to proceed with a plea hearing, Davis kept interrupting the court and both attorneys. At one point, he denied that he had committed the crimes with which he was charged. He also denied that he had discussed the plea form with his attorney. The court ordered a recess so that Davis could consult with his attorney. After the recess, Davis acknowledged that he understood the form and had signed it, but he then claimed to have been threatened into signing it. The trial court refused to accept Davis's plea, and the matter proceeded to trial.

{¶ 7} At trial, the State presented the testimony of Weathers, the victim; Bass, who had witnessed the altercation over the control room monitor; the two employees who came to Weathers's aid in time to break up the altercation and return Davis to his cell; and two of the doctors who treated Weathers for the injuries that he sustained. The State

also presented the testimony of Fred Thomas, the detention director, who explained that one of his responsibilities was to oversee the school located in the detention center, as required and licensed by the State of Ohio. Finally, the State offered into evidence the security video, which showed Davis's attack on Weathers. Davis did not call any witnesses and argued in a brief closing argument that the State failed to prove that Weathers was acting as an employee of DYS and that he had suffered a serious physical injury.

{¶ 8} Davis was found guilty of both charges. The trial court found that the counts merged for the purpose of sentencing, and the State elected to proceed on the felonious assault charge. Immediately after trial, the court sentenced Davis to eight years in prison. Davis appeals.

{¶ 9} Davis's First Assignment of Error:

"THE TRIAL COURT VIOLATED THE DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY ORDERING THAT HE REMAIN HANDCUFFED AND SHACKLED DURING THE TRIAL."

{¶ 10} In his first assignment of error, Davis insists that the trial court denied him of his right to a fair trial by requiring him to appear before the jury in shackles and handcuffs. The United States Supreme Court has held that the due process guarantees embodied in the Fifth and Fourteenth Amendments to the Constitution forbid the use of visible shackles unless their use is justified by an essential state interest, such as courtroom security. *Deck v. Missouri,* 544 U.S. 622, 624, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), citations omitted. Nevertheless, restraint of a defendant may be necessary under some

circumstances, "for the safe, reasonable, and orderly progress of the trial." *State v. Carter,* 53 Ohio App.3d 125, 372 N.E.2d 622 (4th Dist.1977).

{¶ 11} Because a criminal defendant is presumed innocent until he is proven guilty, he is ordinarily entitled to appear in court without restraints. *State v. Bizzell,* 2d Dist. Montgomery No. 18055, 2000 WL 1433868, *2 (Sept. 29, 2000), citation omitted; *State v. Landrum,* 53 Ohio St.3d 107, 118, 559 N.E.2d 710 (1990), citation omitted. And it is only in extraordinary circumstances that it should be permitted. Generally, the determination of whether a defendant should be restrained during trial is for the sound discretion of the trial court. *Id.,* citation omitted. In exercising this discretion, the trial court must take into account the specific circumstances of each particular case. *Deck,* at 632.

> The appellate court will not reverse the trial court's decision, however, unless it determines that the trial court abused its discretion. *State v. Woodards* (1966), 6 Ohio St.2d 14, 23, certiorari denied (1966), 385 U.S. 390. "[S]ound discretion has long meant a discretion that is not exercised arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. *Langnes v. Green,* 282 U.S. 531, 534." *Woodards v. Cardwell,* [430 F.2d 978, 982 (6th Cir.1970), certiorari denied (1971), 401 U.S. 911]. Even though the decision is discretionary, the trial court must state the facts it considered on the record to enable the

appellate court to review the decision. *State v. Morgan* (1992), 84 Ohio App.3d 229, 231-232, and *State v. Carter* (1977), 53 Ohio App.2d 125, 132. *State v. Mitchell,* 6th Dist. Williams No. WM-05-044, 2006-Ohio-5117, ¶20.

{¶ 12} Although we have found no Ohio case that sets forth any particular "test" for determining whether a particular defendant should be restrained, the Sixth Circuit Court of Appeals has articulated four factors for a trial court to consider before ordering a defendant to be restrained. *Lakin v. Stine,* 431 F.3d 959 (6th Cir.2005), *cert. denied,* 547 U.S. 1118, 126 S.Ct. 1925, 164 L.Ed.2d 675 (2006). Those factors are: "(1) the defendant's record, his temperament, and the desperateness of his situation; (2) the state of both the courtroom and the courthouse; (3) the defendant's physical condition; and (4) whether there is a less prejudicial but adequate means of providing security." *Id.* at 964, citing *Kennedy v. Cardwell,* 487 F.2d 101, 110-11 (6th Cir.1973).

{¶ 13} In this case, the trial court did conduct an individualized consideration of Davis's particular circumstances. The court fully explained its reasons, on the record but outside of the jury's presence, for ordering Davis to be restrained, based primarily upon Davis's pattern of violent conduct prior to trial. "[A] defendant's own conduct sometimes amounts to a waiver of the right to be free from any restraint during the course of a trial." *Bizzell,* at *2, citing *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed. 2d 353 (1970), additional citation omitted. The record contains adequate support for the trial court's decision to restrain Davis.

{¶ 14} Davis was charged with committing felonious assault against a staff

member at the juvenile detention center, where he was being held pending adjudication on unrelated charges. While the nature of the charges against a defendant alone cannot provide the entire justification for restraint, it is a factor to be considered. *Lakin,* at 965. Davis was restrained during all juvenile court proceedings and, during the probable cause hearing, he struggled against his shackles, causing concern on the part of the court and the attorneys. The juvenile court judge was concerned that absent restraints, Davis might have become violent.

{¶ 15} Prior to the start of trial, both attorneys "expressed some concern to the Court as to how, if at all, the defendant is going to be restrained during the course of the trial." As the court and counsel discussed the matter of restraint before trial, Davis was loud and disruptive. Davis had similarly been disruptive in a prior trial court appearance. Defense counsel acknowledged that Davis had behaved appropriately when restrained during juvenile court appearances. Both the prosecutor and defense counsel agreed that Davis should be restrained during his trial. The court concluded that for the safety of counsel, court personnel, and the jury, Davis should be restrained. The court has the duty to determine whether there is a "less prejudicial but adequate means of providing security." *Mitchell,* 6th Dist. Williams No. WM-05-044, 2006-Ohio-5117, at ¶ 29, citing *Deck,* 544 U.S. at 633, 125 S.Ct. 2007, 161 L.Ed.2d 953 and *Lakin,* 431 F.3d at 964. *Accord State v. Berry,* 5th Dist. Delaware No. 2006CA0600035, 2007-Ohio-4122, ¶ 47. The court considered the use of a stun belt[1], although this option appears not to have been

---

[1]The Sixth Circuit has stated that the use of a stun belt implicates the "same fundamental issues" as the use of shackles and has applied the same analysis. *United States v. Miller,* 531 F.3d 340, 345 (6th Cir.2008), *cert. denied,*

implemented.[2]

{¶ 16}    The trial court summarized that Davis was restrained because of the nature of the charges against him, the threats Davis made against his previous attorney, the court's observations of Davis's behavior on the morning of trial and during a previous court appearance, defense counsel's observations of Davis's behavior in juvenile court that required restraint, and because there was no objection by defense counsel.

{¶ 17}    The court also made part of the record, for the purpose of appellate review, a log from the Clark County Sheriff's Department, which demonstrated a pattern of violent behavior by Davis during the week before trial.   On one occasion, after breaking the light in his cell, Davis refused to leave the cell for a shower; he then banged on the cell door and threatened to kill anyone who entered his cell in order to remove him.   Later that day, Davis had to be placed in a restraint chair due to his belligerent behavior, including punching, kicking, and head butting the cell walls.   On another occasion, jail staff noted that Davis needed to be housed in a hallway cell, where he could easily be watched, because he "is too violent to be housed in book in."

{¶ 18}    While we may have reached a different, less-restrictive decision, we cannot conclude on this record that the trial court abused its discretion in deciding that, for the safety of all concerned, Davis should be restrained during his trial.

{¶ 19}    Nevertheless, the trial court should have minimized the inherent prejudicial

---

555 U.S. 928, 129 S.Ct. 307, 172 L.Ed.2d 223 (2008).

[2]We cannot tell from the record whether there was a skirt put on the table to hide the shackles, whether Davis was handcuffed in front or behind his back and/or to a belt, how close he was to the jury, or the number of deputies in the courtroom.

effect of Davis's being seen by the jury in shackles and handcuffs by giving a curative instruction to the jury. *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 220. When jurors have briefly glimpsed a defendant in shackles outside of the courtroom, the proper procedure is for the trial court to give a curative instruction. See, e.g., *State v. Spees,* 5th Dist. Stark No. 2002CA00420, 2003-Ohio-7278, ¶60, citing *State v. Chitwood,* 83 Ohio App.3d 443, 449, 615 N.E.2d 257 (1st Dist. 1992). Such an instruction becomes even more important when the defendant, who is charged with a violent assault, is seen in restraints throughout the trial. No such instruction was given in this case, nor was one requested. However, because the evidence of Davis's guilt was overwhelming, we find the error in not giving a curative instruction to have been harmless beyond a reasonable doubt. See, e.g., *Lakin,* 431 F.3d at 966.

**{¶ 20}** Davis's first assignment of error is overruled.

### III

**{¶ 21}** Davis's Second Assignment of Error:

"APPELLANT'S COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY FAILING TO OBJECT TO THE ORDER THAT APPELLANT REMAINING (sic) SHACKLED AND HANDCUFFED."

**{¶ 22}** In his second assignment of error, Davis argues that trial counsel was ineffective for failing to object to the trial court's decision to restrain him during his trial. In order to prevail on a claim of ineffective assistance of counsel, the defendant must show

both deficient performance and resulting prejudice. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Id.

**{¶ 23}** As we discussed in response to Davis's first assignment of error, the trial court did not abuse its discretion in requiring Davis to be restrained during his trial. Accordingly, counsel was not ineffective for failing to object to the restraints.

**{¶ 24}** Davis did not assign as error counsel's ineffectiveness for failing to request a curative jury instruction regarding the use of restraints that were visible to the jury, and as a result he has waived any error. See, e.g., *State v. Wells,* 12th Dist. Warren Nos. CA2008-08-105 & CA2008-09-108, 2009-Ohio-1305, §48, (Ringland, J., concurring), citing *State v. Smith,* 89 Ohio St.3d 323, 327, 2000-Ohio-166, 731 N.E.2d 645. Concerning the error in lack of curative instructions (and/or a request for them) and any prejudicial error in shackling Davis in front of the jury throughout the trial, the overwhelming evidence of the assault showed beyond a reasonable doubt that these did not contribute to the verdicts returned. *Fitzpatrick v. Bradshaw,* S.D.Ohio No. 1:06-cv-356, 2009 WL 3734143 (Nov. 5, 2009). *See also* Crim.R. 52(A).

**{¶ 25}** Davis's second assignment of error is overruled.

IV

**{¶ 26}** Both of Davis's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Lisa M. Fannin
Michael C. Thompson
Hon. Douglas M. Rastatter